No. 10-35519

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
_____

INTERMOUNTAIN FAIR HOUSING COUNCIL, *et al.*,

Plaintiffs-Appellants

v.

BOISE RESCUE MISSION, *et al.*,

Defendants-Appellees
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO
_____

BRIEF FOR THE SECRETARY OF THE UNITED STATES DEPARTMENT
OF HOUSING AND URBAN DEVELOPMENT AS AMICUS CURIAE
_____

> THOMAS E. PEREZ
>  Assistant Attorney General
>
> DENNIS J. DIMSEY
> LINDA F. THOME
>  Attorneys
>  Department of Justice
>  Civil Rights Division
>  Appellate Section
>  Ben Franklin Station
>  P.O. Box 14403
>  Washington, DC 20044-4403
>  (202) 514-4706

# TABLE OF CONTENTS

**PAGE**

STATEMENT OF THE ISSUES..........................................................................1

STATEMENT OF THE CASE...........................................................................2

SUMMARY OF ARGUMENT ..........................................................................3

ARGUMENT

I       SECTIONS 3604(a) AND (b) APPLY TO CONDUCT
THAT DOES NOT INVOLVE THE SALE OR RENTAL
OF A DWELLING .................................................................................4

         A.    *Section 3604(a) Applies To Any Conduct Relating
To The Provision Of Housing That Makes A Dwelling
Unavailable On A Prohibited Basis*............................................4

         B.    *Section 3604(b) Prohibits Discrimination In Or "In
Connection" With The Sale Or Rental Of Dwellings* ..............11

II      THE DISTRICT COURT ERRED IN GRANTING
SUMMARY JUDGMENT ON THE GROUND THAT
DEFENDANTS' HOMELESS SHELTERS
ARE NOT DWELLINGS ....................................................................16

III     THE RELIGIOUS EXEMPTION APPLIES TO
DEFENDANTS' CONDUCT WITH RESPECT TO
BOTH THE DISCIPLESHIP PROGRAM AND
THE SHELTER PROGRAM................................................................24

CONCLUSION ...............................................................................................29

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**CASES:**                                                             **PAGE**

*Baxter* v. *City of Belleville*, 720 F. Supp. 720 (S.D. Ill. 1989) ................................18

*Bloch* v. *Frischholz*, 587 F.3d 771 (7th Cir. 2009) .............................................13, 25

*Chevron U.S.A., Inc.* v. *Natural Res. Def. Council, Inc.*,
    467 U.S. 837 (1984) ...................................................................................11

*City of Edmonds* v. *Oxford House, Inc.*, 514 U.S. 725 (1995) ..................................3

*Committee Concerning Cmty. Improvement* v. *City of Modesto*,
    583 F.3d 690 (9th Cir. 2009) ......................................................................13

*Connecticut Hospital* v. *City of New London*,
    129 F. Supp. 2d 123 (D. Conn. 2001) ....................................................18, 22

*Evans* v. *Tubbe*, 657 F.2d 661 (5th Cir. 1981) ..................................................... 6-7

*Forest Grove Sch. Dist.* v. *T.A.*, 129 S. Ct. 2484 (2009) .........................................10

*Garcia* v. *Condarco*, 114 F. Supp. 2d 1158 (D.N.M. 2000) ...................................18

*Giebeler* v. *M. & B. Assocs.*, 343 F.3d 1143 (9th Cir. 2003) ..................................14

*Hovsons, Inc.* v. *Township of Brick*, 89 F.3d 1096 (3d Cir. 1996) ..........................18

*Jenkins* v. *New York City Dep't of Homeless Servs.*,
    643 F. Supp. 2d 507 (S.D.N.Y. 2009) ..................................................8, 14, 19

*Johnson* v. *Dixon*, 786 F. Supp. 1 (D.D.C. 1991) ..................................................20

*Keith* v. *Volpe*, 858 F.2d 467 (9th Cir. 1988),
    cert. denied, 493 U.S. 813 (1989) ..................................................................7

**CASES (continued):**                                                      **PAGE**

*Kennedy Park Homes Ass'n, Inc.* v. *City of Lackawanna*,
    436 F.2d 108 (2d Cir. 1970),
    cert. denied, 401 U.S. 1010 (1971)..................................................................7

*Lakeside Resort Enter., L.P.* v. *Board of Supervisors
    of Palmyra Township*, 455 F.3d 154 (3d Cir. 2006),
    cert. denied, 549 U.S. 1180 (2007).................................................. 18-19, 22

*Lauer Farms, Inc.* v. *Waushara Cnty. Bd. of Adjustment*,
    986 F. Supp. 544 (E.D. Wis. 1997) ..........................................................19, 23

*Mayers* v. *Ridley*, 465 F.2d 630 (D.C. Cir. 1972).........................................................8

*Metropolitan Hous. Dev. Corp.* v. *Village of Arlington Heights*,
    558 F.2d 1283 (7th Cir. 1977),
    cert. denied, 434 U.S. 1025 (1978).................................................................7

*NAACP* v. *American Family Mut. Ins. Co.*,
    978 F.2d 287 (7th Cir. 1992),
    cert. denied, 508 U.S. 907 (1993)..................................................................7

*Nationwide Mutual Ins. Co.* v. *Cisneros*,
    52 F.3d 1351 (6th Cir. 1995),
    cert. denied, 516 U.S. 1140 (1996).........................................................5, 8

*Ojo* v. *Farmers Group, Inc.*, 600 F.3d 1205 (9th Cir. 2010).........................7, 11, 13

*Patel* v. *Holly House Motels*, 483 F. Supp. 374 (S.D. Ala. 1979)...........................18

*Schneider* v. *County of Will*, 190 F. Supp. 2d 1082 (N.D. Ill. 2002) ................ 18-19

*Schwarz* v. *City of Treasure Island*,
    544 F.3d 1201 (11th Cir. 2008) ...................................................18-19, 21-22

*Southend Neighborhood Improvement Ass'n* v. *County of St. Clair*,
    743 F.2d 1207 (7th Cir. 1984) .................................................................6, 13

*Trafficante* v. *Metropolitan Life Ins. Co.*, 409 U.S. 205 (1982)..............................3

**CASES (continued):**                                                      **PAGE**

*United States* v. *American Inst. of Real Estate Appraisers*,
    442 F. Supp. 1072 (N.D. Ill. 1977),
    appeal dismissed, 590 F.2d 242 (7th Cir. 1978).............................................8

*United States* v. *City of Black Jack*, 508 F.2d 1179 (8th Cir. 1974),
    cert. denied, 422 U.S. 1042 (1975)...................................................7

*United States* v. *City of Parma*, 661 F.2d 562 (6th Cir. 1981),
    cert. denied, 456 U.S. 926 (1982)....................................................7

*United States* v. *Columbus Country Club*,
    915 F.2d 877 (3d Cir. 1990),
    cert. denied, 501 U.S. 1205 (1991)...............................................18, 22, 24, 27

*United States* v. *Hughes Mem'l Home*,
    396 F. Supp. 544 (W.D. Va. 1975)...........................................9, 18

*United States* v. *Southern Mgmt. Corp.*, 955 F.2d 914 (4th Cir. 1992)...................15

*Villegas* v. *Sandy Farms, Inc.*, 929 F. Supp. 1324 (D. Or. 1996)...........................19

*Woods* v. *Foster*, 884 F. Supp. 1169 (N.D. Ill. 1995).....................................*passim*

*Balvage* v. *Ryderwood Improvement and Serv. Ass'n, Inc.*,
    Nos. 10-35714, 10-35970 (9th Cir. Apr. 27, 2011),
    2011 WL 1570377 ......................................................................4

**STATUTES:**

42 U.S.C. 3601 ...........................................................................................3, 8

42 U.S.C. 3602(b) ................................................................................ 2-3, 17, 29

**STATUTES (continued):**                                               **PAGE**

Fair Housing Amendments Act of 1988,
Pub. L. No. 100-430, 102 Stat. 1619 ...............................................................9

42 U.S.C. 3602(e) ...............................................................................................14

42 U.S.C. 3604(a) ............................................................................... 1, 3-4, 29

42 U.S.C. 3604(b) ...............................................................................................11

42 U.S.C. 3604(f) ................................................................................................17

42 U.S.C. 3604(f)(1) ...........................................................................................10

42 U.S.C. 3607(a) ........................................................................................*passim*

42 U.S.C. 3610(g)(2)(C) .....................................................................................10

**REGULATIONS:**

24 C.F.R. 100.201 ...............................................................................................17

24 C.F.R. 100.50(b) ..............................................................................................6

24 C.F.R. 100.50(b)(2) .........................................................................................11

24 C.F.R. 100.65(a) ..............................................................................................11

24 C.F.R. 100.65(b)(2) .........................................................................................12

24 C.F.R. 100.65(b)(4) ................................................................................... 12-13

24 C.F.R. 100.65(b)(5) .........................................................................................12

24 C.F.R. 100.70(d)(4) .........................................................................................12

Final Report of HUD Review of Model Building Codes, 65 Fed. Reg.
15,740, (March 23, 2000) ...................................................................................17

**LEGISLATIVE HISTORY:**                                               **PAGE**

H.R. Rep. No. 711, 100th Cong., 2d Sess. (1988)...................................................10

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

No. 10-35519

INTERMOUNTAIN FAIR HOUSING COUNCIL, *et al.*,

Plaintiffs-Appellants

v.

BOISE RESCUE MISSION, *et al.*,

Defendants-Appellees

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

_____

BRIEF FOR THE SECRETARY OF THE UNITED STATES DEPARTMENT OF
HOUSING AND URBAN DEVELOPMENT AS AMICUS CURIAE

_____

**STATEMENT OF THE ISSUES**

This brief is submitted in response to the Court's invitation of March 1,

2011, for the views of the Secretary of the United States Department of Housing

and Urban Development (HUD or the Secretary) on the following questions:

1. Whether the anti-discrimination provisions in 42 U.S.C. 3604(a) and

3604(b) apply to conduct not involving the sale or rental of a dwelling.

- 2 -

2. Whether, applying Congress's definition of "dwelling" in 42 U.S.C. 3602(b) to the facts of this case, defendants' homeless shelters qualify as dwellings within the meaning of the Fair Housing Act.

3. Whether, applying the religious exemption in 42 U.S.C. 3607(a) to the facts in this case, the Fair Housing Act exempts the kind of religious discrimination that plaintiffs allege.

## STATEMENT OF THE CASE

This is an action brought by a fair housing group and two individual plaintiffs against the Boise Rescue Mission (BRM), alleging discrimination, *inter alia*, on the basis of religion in programs operated by BRM – two homeless shelters and a residential drug and alcohol rehabilitation program known as the Discipleship Program. In brief, plaintiffs allege that defendants have violated Sections 3604(a) and (b) of the Fair Housing Act, by requiring those who stay at the shelters or participate in the Discipleship Program to attend chapel services and participate in other religious activities, and, at the shelter, by giving preferential treatment to those who attend chapel services compared to those who do not. Defendants deny that attendance at the chapel services is mandatory at the shelters, or that any preferences are given to those who attend chapel. But they admit that participation in religious activities is a requirement – indeed that it is the core element – of the Discipleship Program.

- 3 -

## SUMMARY OF ARGUMENT

The Secretary responds as follows to the three questions specified in the Court's order of March 1, 2011. First, the anti-discrimination provisions in 42 U.S.C. 3604(a) and 3604(b) apply to conduct not involving the sale or rental of a dwelling. See pp. 4-16, *infra*. Second, the district court erred in granting summary judgment on the ground that defendants' homeless shelters are not "dwellings" within the meaning of 42 U.S.C. 3602(b). See pp. 16-23, *infra*. Third, the religious exemption in 42 U.S.C. 3607(a) applies to defendants' alleged conduct with respect to both the Discipleship Program and the shelter program. See pp. 24-28, *infra*.

## ARGUMENT

The Fair Housing Act declares it "the policy of the United States to provide, within constitutional limitations, for fair housing throughout the United States." 42 U.S.C. 3601. The Act is given a "generous" construction in accordance with its "broad and inclusive" language. *City of Edmonds* v. *Oxford House, Inc.*, 514 U.S. 725, 731 (1995) (quoting *Trafficante* v. *Metropolitan Life Ins. Co.*, 409 U.S. 205, 209 (1982)). Correspondingly, exemptions from the Act should be "read narrowly in order to preserve the primary operation" of the national policy of fair housing. *City of Edmonds*, 514 U.S. at 731-732 (internal quotation marks & citation omitted). As this Court has recently recognized, HUD's construction of the Fair

- 4 -

Housing Act and its own regulations implementing the Act are entitled to deference. *Balvage* v. *Ryderwood Improvement and Serv. Ass'n, Inc.*, Nos. 10-35714, 10-35970, 2011 WL 1570377 at *7 (9th Cir. Apr. 27, 2012).

**I**

**SECTIONS 3604(a) AND (b) APPLY TO CONDUCT THAT
DOES NOT INVOLVE THE SALE OR RENTAL OF A DWELLING**

Sections 3604(a) and (b) of the Fair Housing Act declare it unlawful:

(a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.

(b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

42 U.S.C. 3604(a) & (b).

A.       *Section 3604(a) Applies To Any Conduct Relating To The Provision Of Housing That Makes A Dwelling Unavailable On A Prohibited Basis*

Section 3604(a) is not limited to discrimination in the sale or rental of dwellings. Nor is it limited to those who are engaged in the sale or rental of dwellings. Section 3604(a) includes three prohibitions: (1) "to refuse to sell or rent after the making of a bona fide offer," (2) "or to refuse to negotiate for the sale or rental of," (3) "or otherwise make unavailable or deny," a dwelling to any person on a prohibited basis. Defendants argue that the third prohibition – "to

- 5 -

otherwise make unavailable or deny" – must be limited to the sale or rental of dwellings, just as the first two prohibitions are.  This contention, however, is not supported by the language of the statute, and is inconsistent with HUD's and the courts' interpretation of the Act.

Nothing in the structure of Section 3604(a) implies, let alone requires, the limitation of the third prohibition to the sale or rental of housing.  The first two prohibitions are expressly limited to the sale or rental of dwellings.  But the third prohibition contains no such limitation, and, by its terms, encompasses a variety of conduct by which housing may "otherwise" be made unavailable.  See *Nationwide Mut. Ins. Co.* v. *Cisneros*, 52 F.3d 1351, 1357 (6th Cir. 1995), cert. denied, 516 U.S. 1140 (1996) (rejecting the argument (see BRM Br. 29-30) that the doctrine of *ejusdem generis* restricts the "otherwise make unavailable or deny" clause to conduct that directly involves the sale or rental of a dwelling).[1]

Consistent with the language of the statute, HUD regulations combine the first two prohibitions in one subsection dealing with the sale and rental of housing, while setting out the third prohibition in a separate subsection applicable to "any

---

[1]  Citations to "BRM Br." refer to the appellees' brief in this appeal. Citations to "R.E." refer to the Record Excerpts filed by the appellant in this appeal.  Citations to "Supp. R.E." refer to the Supplemental Record Excerpts filed by the appellees in this appeal.

- 6 -

conduct relating to the provision of housing." The regulations declare it unlawful

to:

> (1) Refuse to sell or rent a dwelling after a bona fide offer has been made, or to refuse to negotiate for the sale or rental of a dwelling because of race, color, religion, sex, familial status, or national origin, or to discriminate in the sale or rental of a dwelling because of handicap;

> \* \* \* \* \*

> (3) Engage in any conduct relating to the provision of housing which otherwise makes unavailable or denies dwellings to persons because of race, color, religion, sex, handicap, familial status, or national origin.

24 C.F.R. 100.50(b).

Similarly, the courts have squarely rejected defendants' contention that the

prohibitions of Section 3604(a) are limited to those who sell or rent housing. As

the Seventh Circuit has explained, "although Section 3604(a) applies principally to

the sale or rental of dwellings, courts have construed the phrase 'otherwise make

unavailable or deny' in subsection (a) to encompass mortgage 'redlining,'

insurance redlining, racial steering, exclusionary zoning decisions, and other

actions by individuals or governmental units which directly affect the availability

of housing to minorities." *Southend Neighborhood Improvement Ass'n* v. *County*

*of St. Clair*, 743 F.2d 1207, 1209 (7th Cir. 1984). In *Evans* v. *Tubbe*, 657 F.2d

661, 662-663 (5th Cir. 1981), for example, the Fifth Circuit held that plaintiff

stated a claim for violation of Section 3604(a) when she alleged that a neighboring

- 7 -

property owner had erected a fence to block access to her property. "Section 3604(a)," the court wrote, "is not limited to discriminatory practices by actual lessors and vendors of dwellings." *Id.* at 663 n.3.

Accordingly, courts, including this Court, have long applied Section 3604(a) to a wide range of conduct that does not involve the sale or rental of housing, including municipal land-use practices and discrimination by insurers and appraisers. See, *e.g.*, *Keith* v. *Volpe*, 858 F.2d 467, 482-484 (9th Cir. 1988) (municipal refusal to permit construction of low-income housing), cert. denied, 493 U.S. 813 (1989); *Ojo* v. *Farmers Grp., Inc.*, 600 F.3d 1205, 1208 (9th Cir. 2010) (en banc) (discrimination by insurer in the denial and pricing of homeowners insurance); see also *Kennedy Park Homes Ass'n, Inc.* v. *City of Lackawanna*, 436 F.2d 108 (2d Cir. 1970) (refusal to permit sewer hookup), cert. denied, 401 U.S. 1010 (1971); *United States* v. *City of Black Jack*, 508 F.2d 1179, 1184 (8th Cir. 1974) (municipal zoning ordinance prohibiting construction of multi-family housing), cert. denied, 422 U.S. 1042 (1975); *Metropolitan Hous. Dev. Corp.* v. *Village of Arlington Heights*, 558 F.2d 1283 (7th Cir. 1977) (municipal refusal to rezone land to permit construction of low-income housing), cert. denied, 434 U.S. 1025 (1978); *United States* v. *City of Parma*, 661 F.2d 562 (6th Cir. 1981) (imposition of building height limitations to exclude housing project for racial reasons), cert. denied, 456 U.S. 926 (1982); *NAACP* v. *American Family Mut. Ins.*

- 8 -

*Co.*, 978 F.2d 287, 297-301 (7th Cir. 1992), cert. denied, 508 U.S. 907 (1993)

(homeowners insurance); *Nationwide*, 52 F.3d at 1355-1360 (homeowners

insurance); *United States* v. *American Inst. of Real Estate Appraisers*, 442 F. Supp.

1072, 1079 (N.D. Ill. 1977) (discrimination by real estate appraisers), appeal

dismissed, 590 F.2d 242 (7th Cir. 1978); cf. *Mayers* v. *Ridley*, 465 F.2d 630 (D.C.

Cir. 1972) (en banc) (reversing dismissal of action under 42 U.S.C. 3604(c), to

enjoin recorder of deeds from recording racially-restrictive covenants).

In *Woods* v. *Foster*, 884 F. Supp. 1169, 1175 (N.D. Ill. 1995), the court

rejected the specific contention that defendants make here – that Section 3604(a)

does not apply to a homeless shelter that provides housing without charge to the

occupants. "The FHA was passed in order to 'provide, within constitutional

limitations, for fair housing throughout the United States,'" the court explained.

*Ibid.* (quoting 42 U.S.C. 3601). "As such, there is no reason to conclude that the

scope of the FHA should be limited to those who pay for their own housing, rather

than extended to all victims of the types of discrimination prohibited by the Act."

*Ibid.* [2]

---

[2] *Jenkins* v. *New York City Department of Homeless Services*, 643 F. Supp. 2d 507, 519-520 (S.D.N.Y. 2009), dismissed a pro se complaint alleging disability discrimination, ruling, *inter alia*, that Section 3604(f)(1) of the Fair Housing Act did not apply to a homeless shelter where the occupants did not pay rent. The court distinguished *Woods*, relying on the "critical difference" between Section 3604(f)(1) and Section 3604(a), in that the former declares it unlawful to

(continued…)

- 9 -

*United States* v. *Hughes Memorial Home*, 396 F. Supp. 544, 549-550 (W.D. Va. 1975), similarly rejected a contention that the Act is inapplicable to an organization that is not engaged in the commercial sale or rental of housing. "Coverage under the Fair Housing Act," the court wrote, "is not limited to those who sell, rent, or finance real estate.  The Act has been applied not only to persons selling or renting dwellings, but also to newspapers carrying advertisements, * * * to registrars of deeds recording instruments containing racially restrictive covenants, * * * and to municipalities engaging in zoning or discriminatory land use practices." *Id.* at 549-550 (citations omitted).  Moreover, the *Hughes* court noted, "[t]he existence of the limited exemption for religious organizations demonstrates that charitable agencies not embraced by the exemption are covered by the Act." *Id.* at 550.

Notably, many of these decisions construing the "otherwise make unavailable or deny" clause were issued before 1988, when Congress comprehensively expanded and amended the Fair Housing Act.  Fair Housing Amendments Act of 1988, Pub. L. No. 100-430, 102 Stat. 1619.  When it did so, Congress left the "make unavailable or deny" clause in Section 3604(a)

---

(…continued)
discriminate in the sale or rental, or "to otherwise make unavailable or deny, a dwelling *to any buyer or renter*." *Id.* at 519.  Congress's addition of the highlighted phrase to Section 3604(f)(1), the court reasoned, signaled an intention to narrow its application. *Id.* at 519-520.

- 10 -

unchanged. See *Forest Grove Sch. Dist.* v. *T.A.*, 129 S. Ct. 2484, 2492 (2009) ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change."). Indeed, Congress acknowledged and endorsed the application of the Act to municipal land-use practices by adopting an amendment directing HUD to refer complaints involving such practices to the Attorney General after investigation. See 102 Stat. 1628; 42 U.S.C. 3610(g)(2)(C).

In addition, the 1988 Amendments enacted a new Section 3604(f), prohibiting discrimination on the basis of disability, including a provision paralleling Section 3604(a), and declaring it unlawful:

> (f)(1) to discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of –
>
> (A) that buyer or renter,
>
> (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or
>
> (C) any person associated with that buyer or renter.

102 Stat. 1620; 42 U.S.C. 3604(f)(1). The legislative history of this provision makes it clear that Congress did not intend to limit its application to those who sell or rent housing. See H.R. Rep. No. 711, 100th Cong., 2d Sess. 24 (1988) (Section 804(f)(1) applies "to state or local land use and health and safety laws, regulations, practices or decisions").

- 11 -

HUD's interpretation of Section 3604(a), applying the "make unavailable or deny" clause to "any conduct relating to the provision of housing," is thus a "permissible construction" of the statute entitled to judicial deference. See *Ojo*, 600 F.3d at 1208 (quoting *Chevron USA, Inc.* v. *Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-843 (1984)).

**B.       *Section 3604(b) Prohibits Discrimination In Or "In Connection" With The Sale Or Rental Of Dwellings***

Section 3604(b) prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith." 42 U.S.C. 3604(b). HUD's regulations construe the term "in connection therewith" in this provision to refer back to the "sale or rental of a dwelling," declaring it unlawful to:

> (2) Discriminate in the terms, conditions or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with sales or rentals, because of race, color, religion, sex, handicap, familial status, or national origin.

24 C.F.R. 100.50(b)(2); see also 24 C.F.R. 100.65(a) ("It shall be unlawful, because of race, color, religion, sex, handicap, familial status, or national origin, to impose different terms, conditions or privileges relating to the sale or rental of a dwelling or to deny or limit services or facilities in connection with the sale or rental of a dwelling.").

- 12 -

These prohibitions, however, are not limited to the sale or rental transaction itself. The phrases "terms, conditions, or privileges of sale or rental" and "provision of services or facilities" in Section 3604(b) encompass activities and benefits that are ongoing in nature, such as the use of common areas, maintenance, access to facilities, and rules enforcement. The regulations, for example, declare that unlawful conduct under this Section includes "[f]ailing [to perform] or delaying maintenance or repairs of sale or rental dwellings" for discriminatory reasons, 24 C.F.R. 100.65(b)(2); "[l]imiting the use of privileges, services or facilities associated with a dwelling" for discriminatory reasons, 24 C.F.R. 100.65(b)(4); and "[d]enying or limiting services or facilities in connection with the sale or rental of a dwelling, because a person failed or refused to provide sexual favors," 24 C.F.R. 100.65(b)(5).

Nor are the prohibitions in Section 3604(b) limited to those who are engaged in the sale or rental of dwellings. The regulations declare it unlawful to "refus[e] to provide municipal services or property or hazard insurance for dwellings or provid[e] such services or insurance differently." 24 C.F.R. 100.70(d)(4).

Finally, the regulations provide that the protections of Section 3604(b) are not limited to the "owner or tenant" of a dwelling, declaring it unlawful to "[l]imit[] the use of privileges, services or facilities associated with a dwelling because of race, color, religion, sex, handicap, familial status, or national origin of

- 13 -

an owner, tenant *or a person associated with him or her*."  24 C.F.R. 100.65(b)(4) (emphasis added).

The courts similarly have applied Section 3604(b) to encompass both post-acquisition discrimination and matters that are connected to, but not a part of, the sale or rental transaction, including conduct by defendants who are not engaged in the sale or rental of housing.  In *Committee Concerning Community Improvement* v. *City of Modesto*, 583 F.3d 690, 711-715 (9th Cir. 2009) (*CCCI*), for example, this Court held that residents of predominantly Latino neighborhoods stated a valid claim against the City of Modesto under Section 3604(b) when they alleged that the City had denied them adequate municipal services because of their race and national origin.  Rejecting the contention that Section 3604(b) is limited "to services or facilities provided at the moment of acquisition," *CCCI* held that a "natural reading * * * of the statute encompasses claims regarding services or facilities perceived to be wanting after the owner or tenant has acquired possession of the dwelling."  *Id.* at 713.  This Court has also held that Section 3604(b) encompasses a claim of discrimination against an insurance provider in the pricing of homeowners insurance, reasoning that "[h]omeowner's insurance can also be seen as a 'service' connected to the sale of a dwelling."  *Ojo*, 600 F.3d at 1208; see also *Bloch* v. *Frischholz*, 587 F.3d 771, 779-781 (7th Cir. 2009) (en banc) (post-acquisition discrimination by condominium association); see also *Southend*, 743

- 14 -

F.2d at 1210 ("services generally provided by governmental units such as police and fire protection or garbage collection") (*dicta*); *Woods*, 884 F. Supp. at 1171-1172, 1175 (denying motion to dismiss claims of sexual harassment of existing occupants).

To the extent that Section 3604(b) requires that there be a "connection" between the challenged conduct and the "sale or rental of a dwelling," it should be noted that the Fair Housing Act broadly defines the term "to rent," to include "to lease, to sublease, to let and otherwise to grant for a consideration the right to occupy premises not owned by the occupant." 42 U.S.C. 3602(e). Notably, under this definition, the term "to rent" is an act performed by the owner, not the occupant of the dwelling. And nothing in the definition requires that the consideration be paid by the occupant. See *Woods*, 884 F. Supp. at 1175 (holding that the defendants' receipt of funds from HUD was "undoubtedly 'consideration' granted for the right to occupy the premises of the Shelter").[3]

Moreover, limiting the protections of the Act to tenants who pay their own rent would create a large gap in coverage, permitting landlords to discriminate against anyone whose rent is paid by family members or others. Cf. *Giebeler* v. *M.*

---

[3] *Jenkins* v. *New York City Department of Homeless Services*, 643 F. Supp. 2d 507, 519 (S.D.N.Y. 2009) disagreed with *Woods* and held that "[a] far more plausible reading of the statute would limit the word 'rent' to consideration paid by the person who has the right to occupy the dwelling." But nothing in the language of Section 3602(e) supports such a reading.

*& B. Assocs.*, 343 F.3d 1143, 1157 (9th Cir. 2003) (applying reasonable accommodation requirement of Fair Housing Act to claim of disabled plaintiff whose rent would be paid by his mother, and noting that "[r]entals by parents for children are not unusual in most rental markets"); *United States* v. *Southern Mgmt. Corp.*, 955 F.2d 914 (4th Cir. 1992) (applying Fair Housing Act to landlord's refusal to rent apartments to community services board for use by individuals in drug and alcohol rehabilitation program). This interpretation of the definition is also consistent with Section 3604(b)'s protection of "any person" from discrimination.

Nor does the statutory definition of "to rent" require the exchange of money, as long as "consideration" is exchanged for the right of occupancy.[4] In this case, occupants of both the shelters and the Discipleship Program must agree to abide by rules of conduct, including the performance of daily chores, as a condition of occupancy. See Supp. R.E. 102-104, 106-109. The shelter's rules, for example, require participants to perform daily tasks or chores, and specify that failure to comply may result in temporary or permanent expulsion from the shelter. Supp. R.E. 102-103. Those who wish to stay at the shelter must sign a statement

---

[4] "Consideration" means "[s]omething (such as an act, a forbearance, or a return promise) bargained for and received by a promisor from a promisee; that which motivates a person to do something, esp. to engage in a legal act." *Black's Law Dictionary* 347 (9th ed. 2009).

- 16 -

acknowledging receipt of the rules when they check in.  Supp. R.E. 80, 102, 104.[5]

Neither the parties nor the district court, however, addressed the question whether

there was sufficient evidence in the summary judgment record that compliance

with these rules was agreed to as "consideration" for occupancy.  As explained in

Part III, below, because plaintiffs' claims of discrimination on the basis of religion

may be resolved on other grounds, it is not necessary to address this question

further and we express no opinion on this essentially fact-bound question.

## II

## THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT ON THE GROUND THAT DEFENDANTS' HOMELESS SHELTERS ARE NOT DWELLINGS

The Act defines the term "dwelling" to include "any building, structure, or

portion thereof which is occupied as, or designed or intended for occupancy as, a

residence by one or more families."  42 U.S.C. 3602(b).  This definition should be

broadly construed to effectuate the purposes of the Act.  *Schwarz* v. *City of*

*Treasure Island*, 544 F.3d 1201, 1216 (11th Cir. 2008).

HUD regulations make it clear that the term "dwelling" includes

accommodations in homeless shelters, defining the term "dwelling unit" to include

"dormitory rooms and sleeping accommodations in shelters intended for

---

[5]  Participants in the Discipleship Program who are employed must pay $25 per week for room and board.  This money, however, is held for the participant and refunded when she moves out.  Supp. R.E. 109.

- 17 -

occupancy as a residence for homeless persons." 24 C.F.R. 100.201.[6] HUD has

stated that the length of stay is only one factor to be considered in determining

whether a particular building is a "dwelling" covered by the Act:

> Other factors to be considered include: (1) Whether the rental rate for the unit will be calculated based on a daily, weekly, monthly or yearly basis; (2) Whether the terms and length of occupancy will be established through a lease or other written agreement; (3) What amenities will be included inside the unit, including kitchen facilities; (4) How the purpose of the property will be marketed to the public; (5) Whether the resident possesses the right to return to the property; and (6) Whether the resident has anywhere else to which to return.

Final Report of HUD Review of Model Building Codes, 65 Fed. Reg. 15,740,

15,746 (March 23, 2000).

HUD's interpretation is consistent with that of the courts. The statute

defines "dwelling" to include "any building, structure, or portion thereof which is

occupied as, or designed or intended for occupancy as, a residence by one or more

families," 42 U.S.C. 3602(b), but does not define the key term "residence." As

multiple courts have noted, however, the ordinary meaning of that term is: "a

temporary or permanent dwelling place, abode or habitation to which one intends

to return as distinguished from the place of temporary sojourn or transient visit."

---

[6] It is not significant that Section 100.201 of the regulations concerns disability discrimination and defines "dwelling unit" rather than "dwelling." See BRM Br. 21. The term "dwelling" is equally applicable to the disability provisions of the Act. See 42 U.S.C. 3604(f). And, by its terms, "*dwelling* unit" must meet the definition of "dwelling."

- 18 -

*United States* v. *Hughes Mem. Home*, 396 F. Supp. 544, 549 (W.D. Va. 1975) (quoting *Webster's Third International Dictionary* 1931); see also *United States* v. *Columbus Country Club*, 915 F.2d 877, 881 (3d Cir. 1990), cert. denied, 501 U.S. 1205 (1991); *Schwarz*, 544 F.3d at 1214; *Woods* v. *Foster*, 884 F. Supp. 1169, 1173 (N.D. Ill. 1995); *Patel* v. *Holly House Motels*, 483 F. Supp. 374, 381 (S.D. Ala. 1979).

On the one hand, it is well established that the term "dwelling" does not include a motel, *Patel*, 483 F. Supp. at 381; or a bed and breakfast, *Schneider* v. *County of Will*, 190 F. Supp. 2d 1082, 1087 (N.D. Ill. 2002).[7] On the other hand, courts have held that the term encompasses a children's home, *Hughes*, 396 F. Supp. at 548-549; a hospice for terminally ill patients, *Baxter* v. *City of Belleville*, 720 F. Supp. 720, 731 (S.D. Ill. 1989); seasonal housing, *Columbus Country Club*, 915 F.2d at 881; a nursing home, *Hovsons, Inc.* v. *Township of Brick*, 89 F.3d 1096 (3d Cir. 1996); group homes for individuals recovering from drug and alcohol addictions, *e.g.*, *Lakeside Resort Enterprises, L.P.* v. *Board of Supervisors of Palmyra Township*, 455 F.3d 154 (3d Cir. 2006), cert. denied, 549 U.S. 1180 (2007); *Connecticut Hospital* v. *City of New London*, 129 F. Supp. 2d 123 (D. Conn. 2001); *Schwarz*, 544 F.3d at 1213-1216; and seasonal housing for migrant

---

[7] One court also has held that the term "dwelling" does not include a city jail, reasoning that a jail "is designed as a detention facility not a 'residence.'" *Garcia* v. *Condarco*, 114 F. Supp. 2d 1158, 1160 (D.N.M. 2000).

workers, *e.g.*, *Lauer Farms, Inc.* v. *Waushara County Board of Adjustment*, 986 F. Supp. 544, 557, 559 (E.D. Wis. 1997); *Villegas* v. *Sandy Farms, Inc.*, 929 F. Supp. 1324, 1328 (D. Or. 1996). The key factors courts have considered in reaching these determinations are the length of stay, whether the occupants intend to return to (or remain in) the building, and whether the occupants view the building as their home, albeit a temporary one. See *Schwarz*, 544 F.3d at 1215; *Lakeside*, 455 F.3d at 158; *Schneider*, 190 F. Supp. 2d at 1087.

*Woods* found the term "dwelling" applicable to a homeless shelter. "The homeless," the court explained, "are not visitors or those on a temporary sojourn in the sense of motel guests. Although the Shelter is not designed to be a place of permanent residence, it cannot be said that the people who live there do not intend to return – they have nowhere else to go." 884 F. Supp. at 1173. The court rejected defendants' contention that the shelter was not a dwelling because occupants' stay was limited to 120 days, ruling that the length of stay was not the determining factor. "Because the people who live in the Shelter have nowhere else to 'return to,' the Shelter is their residence in the sense that they live there and not in any other place." *Id.* at 1173-1174; see also *Jenkins* v. *New York City Dep't of Homeless Srvs.*, 643 F. Supp. 2d 507, 518 (S.D.N.Y. 2009) (concluding, on motion to dismiss, that homeless shelter "could well fall within the definition of dwelling"

- 20 -

where the plaintiff "intends to stay at the shelter as long as he can, * * * and has no other home to go to").[8]

The evidence that BRM shelters are dwellings is sufficient to withstand a motion for summary judgment.  Most importantly, as homeless shelters, they provide housing for those who "have nowhere else to go."  *Woods*, 884 F. Supp. at 1173.  Plaintiff Chinn stated that he was "periodically homeless" through 2005 and 2006 and that he alternatively stayed at the Front Street and River of Life shelters throughout those years.  R.E. 46.[9]  Chinn stated that during the period he was homeless, the shelters were his only home, that he stored all of his belongings there, and that he expected to live in the shelters "in excess of several months."  R.E. 47.  He moved out, he said, only because of the defendants' discriminatory conduct.  R.E. 47-48.  When he did move out, he lived on the streets until a new shelter opened that did not require participation in religious services.  R.E. 48.

---

[8] *Johnson* v. *Dixon*, 786 F. Supp. 1, 4 (D.D.C. 1991), expressed doubt that an emergency homeless shelter fell within the definition of dwelling.  But the court provided little analysis and went on to resolve the case on other grounds.

[9] Based on records submitted by the defendants, the district court found that Chinn stayed at the River of Life shelter for five nights in May 2005, one night in October 2005, nine nights in April 2006, and six nights in May 2006.  R.E. 7-8. Defendants provided no dates for Chinn's occupancy of the Front Street shelter. On summary judgment, the court must assume the truth of Chinn's allegation that he stayed at the two shelters alternately throughout the 2005-2006 period during which he was homeless.

- 21 -

Thus, Chinn treated the shelters as his home to which he intended to return, and he had nowhere else to live, except the streets, until a new shelter opened.

The district court emphasized the ways in which the shelter program is not like a residence. Occupants are required to check into the shelter during a designated period and must leave by 8:00 a.m. each morning. R.E. 20. Except for lunch time, and with the exception of those who are ill or disabled, occupants are not permitted to stay at the shelter during the day. R.E. 20. Occupants are assigned a sleeping place, and there is no guarantee that returning occupants will be assigned the same bed. R.E. 20. Occupants are not permitted to personalize their sleeping areas, and may not store their belongings in the sleeping areas of the shelter. R.E. 20. With limited exceptions, occupants may not receive guests, mail, or telephone calls at the shelter. R.E. 20.

But in other ways, the shelter program provides a home-like environment. It provides occupants with three meals per day, which they eat in a congregate dining room. Supp. R.E. 81-82. Occupants may socialize in a day room. Supp. R.E. 81. See *Schwarz*, 544 F.3d at 1215-1216 (halfway houses are "more like homes than hotels because they have common living areas, such as kitchens and living rooms, where residents can socialize like a family"). Typically those who return are assigned the same bed each night, even though there is no guarantee that will happen. Supp. R.E. 83. Indeed, in the morning, those who plan to return the next

- 22 -

night make their beds and store their pajamas under the pillow. Supp. R.E. 81. Significantly, those who do not return the next night are barred from the shelter for 30 days. Supp. R.E. 83. The purpose of this rule, according to defendants, "is to help prevent the shelter from becoming an 'occasional shelter' that helps enable a homeless lifestyle." Supp. R.E. 83. Thus, even the defendants regard the shelter as more than an overnight accommodation, and they discourage occupants from behaving like transient guests. While occupants may not personalize their sleeping area or store belongings there (except, apparently, their pajamas), the shelter does provide a secure storage area. Supp. R.E. 82-83. And occupants may receive mail and telephone calls through the Work Search program operated at the shelter. Supp. R.E. 83.

The 17-day limit for consecutive overnight stays at BRM's shelters is shorter than the average or expected length of stay in most of the cases cited above. See, *e.g.*, *Columbus Country Club*, 915 F.2d at 881 (occupants of summer bungalows stayed for up to five months each summer and returned each year); *Schwarz*, 544 F.3d at 1215 (average stay in half-way houses was six to ten weeks); *Connecticut Hospital*, 129 F. Supp. 2d at 132 (occupants of rehabilitation facility stayed one to three months; average stay was six weeks); *Lakeside*, 455 F.3d at 158-159 (average stay at rehabilitation facility was slightly over two weeks because of limitation on insurance reimbursement, but facility was designed for longer stays and some

- 23 -

occupants stayed longer); *Lauer*, 986 F. Supp. at 559 (occupants of migrant worker housing would stay four to five months).  This does not mean the shelters are not dwellings for several reasons.  First, the limitation is suspended during the coldest months, November through March, making it possible for an occupant to stay at the shelter for up to four months.  Supp. R.E. 82.  Second, a fair reading of Chinn's affidavit is that he was able to alternate between two shelters operated by BRM throughout an extended period.  R.E. 46-47.  Third, as the court recognized in *Woods*, the length of stay is not definitive when the occupants of a building have nowhere else to live.  884 F. Supp. at 1173-1174.  Like the occupants of the shelter in *Woods,* because the occupants of BRM's shelter program "have nowhere else to 'return to,' the Shelter is their residence in the sense that they live there and not in any other place."  *Ibid.*  Finally, the relevance of the length of stay is to distinguish a dwelling from transient accommodations such as hotels.  And, as the Third Circuit recognized in *Lakeside*, the average two-week stay in that case was much longer than the average one or two-night stay in a hotel.  455 F.3d at 159 n.9 (noting that "63% of business travelers, and 73% of leisure travelers, spent only one or two nights per hotel stay") (citation omitted).

- 24 -

## III

## THE RELIGIOUS EXEMPTION APPLIES TO DEFENDANTS' CONDUCT WITH RESPECT TO BOTH THE DISCIPLESHIP PROGRAM AND THE SHELTER PROGRAM

The Fair Housing Act exempts certain conduct by religious organizations:

> Nothing in this subchapter shall prohibit a religious organization, association, or society, or any nonprofit institution or organization operated, supervised or controlled by or in conjunction with a religious organization, association, or society, from limiting the sale, rental or occupancy of dwellings which it owns or operates for other than a commercial purpose to persons of the same religion, or from giving preference to such persons, unless membership in such religion is restricted on account of race, color, or national origin.

42 U.S.C. 3607(a). This exemption should be narrowly construed to effectuate the broad remedial purpose of the Act. *United States* v. *Columbus Country Club*, 915 F.2d 877, 883 (3d Cir. 1990), cert. denied, 501 U.S. 1205 (1991).

The religious exemption applies to defendants' conduct with respect to both the Discipleship Program and the shelter program. The district court found that defendants met the first two elements of the religious exemption: BRM is a religious organization, and it operates both programs for a noncommercial purpose. R.E. 23-25. The court concluded, however, that the exemption did not apply because defendants did not limit occupancy in either program to persons of the same religion, and did not give preference to persons of the same religion. R.E. 25-26. Both plaintiffs were admitted to the programs, the district court reasoned, and neither was of the same religion as BRM. R.E. 26. And, the court ruled,

- 25 -

requiring participants in the Discipleship Program to participate in religious activities and to convert to Christianity "does not fall within the meaning of limiting occupancy to, or giving preference to, 'persons of the same religion.'" R.E. 26 (quoting 42 U.S.C. 3607(a)).

This rationale misconstrues the religious exemption, which permits religious organizations to "limit * * * occupancy of dwellings" to those of the same religion, and to "giv[e] preference" to such persons. 42 U.S.C. 3607(a). Just as Sections 3604(a) and (b) are not limited to the initial decision to sell, rent, or make housing available (see pp. 4-14, *supra*), so too the exemption is not limited to the initial decision to grant occupancy. If a landlord rents to a tenant, but later evicts her because of her religion, he has made housing unavailable to her because of her religion, in violation of Section 3604(a). See *Bloch* v. *Frischolz*, 587 F.3d 771, 776 (7th Cir. 2009) (en banc) ("[p]rohibiting discrimination at the point of sale or rental but not at the moment of eviction would only go halfway toward ensuring availability of housing"). If a condominium association deliberately enforces a rule to prohibit a longtime occupant from displaying a mezuzah on her doorway, the association discriminates against her on the basis of religion in violation of Section 3604(b). See *id.* at 779-781. Correspondingly, if a religious organization admits an occupant, but later evicts her because she is not of the same religion, the organization has "limit[ed] * * * occupancy" based upon religion. 42 U.S.C.

- 26 -

3607(a). And, if the organization admits an occupant to a dwelling without regard to his religion, but later discriminates among occupants, it may be "giving preference" to persons of the same religion. *Ibid.*

The exemption applies to the defendants' expulsion of Cowles from the Discipleship Program. To be sure, Cowles was admitted to the program. But she later was expelled. The parties articulated the reason for the expulsion somewhat differently. According to Cowles, defendants expelled her because she was not a Christian. R.E. 43. According to defendants, she was expelled "because she was not committed to recovery through the Discipleship Program's rigorous religious requirements." Supp. R.E. 88. However the rationale is articulated, BRM expelled Cowles because she did not adhere to its religious beliefs. Defendants thus "limit[ed] * * * occupancy" in the program "to persons of the same religion." 42 U.S.C. 3607(a). That conduct is protected by the exemption.

The exemption also applies to Chinn's allegations. Chinn alleged (1) that shelter staff told him he was required to attend chapel services in order to stay at the shelters, and (2) that defendants gave preferences to those who attended such services. A housing provider may "limit" the occupancy of a dwelling or give "preference" to persons of the same religion by creating a housing opportunity suited only to members of that religion. In particular, compulsory attendance at

- 27 -

daily religious celebrations of the religion's creed or beliefs creates a *de facto* limitation or preference restricting those who will apply or continue to stay.

Thus, by requiring attendance at chapel services and giving preferences based on such attendance, defendants were limiting occupancy and giving preferences to those of the same religion. Moreover, because those who attended the services were more likely to be members of the same religion as BRM, the attendance requirement and the benefits given to those who attend chapel gave a "preference" to "persons of the same religion." Indeed, Chinn's claim of discrimination on the basis of religion – which centers on the chapel services at the shelter – depends upon just such a definition of the term "religion" in Section 3604 of the Act. There is no reason the term "religion" should include religious observances for purposes of Section 3604, but not for Section 3607.

This does not mean that the exemption gives organizations a free hand to discriminate on the basis of religion. First, the exemption is limited to religious organizations or non-profit organizations "operated, supervised or controlled by or in conjunction with a religious organization." 42 U.S.C. 3607(a); see *Columbus Country Club*, 915 F.2d at 882-883 (denying religious exemption for failure to establish this element). Second, the organization must own or operate the dwellings "for other than a commercial purpose." 42 U.S.C. 3607(a). Third, the exemption does not apply if membership in the religion "is restricted on account of

- 28 -

race, color, or national origin." *Ibid.* Fourth, the organization may limit occupancy or give preferences only to those "of the same religion." *Ibid.* Thus, while a qualifying organization may discriminate in favor of members or adherents of its own religion, it may not discriminate among other religions. In other words, the exemption permits a Christian organization to limit occupancy or give preference to Christians. But it would not permit such an organization to admit Jews, but not Muslims or Buddhists. In the case of both the Discipleship Program and the shelter, defendants are alleged to have discriminated in favor of those who adhered to *their* religious beliefs and participated in *their* religious observances. By doing so, they "limit[ed] * * * occupancy" and "g[ave] preference" to those "of the same religion."

- 29 -

## CONCLUSION

The position of the Secretary is that (1) the anti-discrimination provisions in 42 U.S.C. 3604(a) and 3604(b) apply to conduct not involving the sale or rental of a dwelling; (2) the district court erred in granting summary judgment on the ground that defendants' homeless shelters do not qualify as "dwellings" within the meaning of 42 U.S.C. 3602(b); and (3) the religious exemption in 42 U.S.C. 3607(a) exempts the kind of religious discrimination that plaintiffs allege.

Respectfully submitted,

.                        THOMAS E. PEREZ
                           Assistant Attorney General

s/ *Linda F. Thome*
DENNIS J. DIMSEY
LINDA F. THOME
  Attorneys
  Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C. 20044-4403
  (202) 514-4706

## CERTIFICATE OF COMPLIANCE

I certify, pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), that the attached BRIEF FOR THE SECRETARY OF THE UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT AS AMICUS CURIAE:

(1) complies with Federal Rules of Appellate Procedure 29(d) and 32(a)(7)(B), because it contains 6,748 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii); and

(2) complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Word 2007, in 14-point Times New Roman font.

*s/ Linda F. Thome*
LINDA F. THOME
 Attorney

Dated:  April 29, 2011

**CERTIFICATE OF SERVICE**

I hereby certify that on April 29, 2011, the foregoing BRIEF FOR THE

SECRETARY OF THE UNITED STATES DEPARTMENT OF HOUSING AND

URBAN DEVELOPMENT AS AMICUS CURIAE was filed electronically with

the Clerk of the Court using the CM/ECF system, which will send notice of such

filing to the following registered CM/ECF users:

Ken Nagy
P.O. Box 164
Lewiston, ID 83501

Luke W. Goodrich
Eric D. Rassbach
Asma T. Uddin
Diana M. Verm
The Becket Fund for Religious Liberty
3000 K St. NW Suite 220
Washington, D.C. 20007

Steven W. Fitschen
The National Legal Foundation
2224 Virginia Beach Blvd.
Virginia Beach, VA 23454

Darryl P. Rains
Morrison & Foerster, LLP
755 Page Mill Rd.
Palo Alto, CA 94304-1018

Eric Baxter
Jason D. Moore
Arent Fox LLP
1050 Connecticut Avenue
Washington, D.C. 20036

Ayesha N. Khan
Americans United for Separation of Church and State
1301 K St. NW
Washington, D.C. 20005

I further certify that on April 29, 2011, I served a copy of the

foregoing document on the following parties or their counsel of record by First

Class Mail:

Aditya Bamzai
J. Casico
Kirkland & Ellis LLP
655 Fifteenth St. NW
Washington, D.C. 20006

Martin C. Hendrickson
Franklin George Lee
Givens Pursely LLP
601 West Bannock Street
Boise, ID 83702

s/ *Linda F. Thome*
LINDA F. THOME
Attorney